[Filed June 10, 1885.]

Y. A. SMITH v. E. D. SHATTUCK, ADM.

EVIDENCE. — It is ordinarily proper for courts at *nisi prius* to permit documents to be offered in evidence provisionally, and afterwards to instruct the jury as to their effect.

STATUTE OF LIMITATIONS — COLOR OF TITLE — TAX DEED. — Where a defendant claims title by virtue of the Statute of Limitations, and offers in evidence a tax deed to himself, such deed in connection with possession is competent, even if its description of the premises is imperfect, to show that the defendant was holding under color of title.

VERDICT — POWER OF COURT OVER. — The court has no right to direct the jury to find a designated verdict. Its authority is limited to stating to them "all matters of law which it thought necessary for their information in giving their verdict."

MULTNOMAH COUNTY.     Plaintiff appeals.     Affirmed.

The facts are stated in the opinion.

*Killin & Moreland,* for Appellant.

The only *title* under which the respondent claimed is an old tax deed to I. B. Smith, which had no description of land except "thirty-seven and one half *acres of land in Section* 11, *T.* 1 *S. of R.* 1 *E., known as Smith's farm, in Multnomah County, State of Oregon."* Neither the assessment roll, delinquent list, nor sheriff's return, upon which this deed was based, had in them the words "*known as Smith's farm."* The evidence should show that the land had acquired a name—a proper name. (1 Greenl. Ev. p. 426, n.; 2 Wharton Ev. § 943; Burroughs Tax. 204, 105; Blackwell Tax Title, 127–133, 379, n. *a*; 2 Desty Tax. 921.) Jurisdictional facts are not cured by three-year statute. (Code, 768, 771; Burroughs Tax. 340, 341.) Illegal or insufficient assessment a radical defect not cured by five years' prescription. (*Person* v. *O'Neal,* 32 La. An. 228; *Woolfolk* v. *Fonbene,* 15 La. An. 15; *Thibodaux* v. *Keller,* 29 La. An. 510.) A special Statute of Limitation for titles under tax deeds can be pleaded only when defendant could recover on strength of title. (*Lockridge* v. *Daggett,* 54 Iowa, 335; S. C. 47 Iowa, 679; *Barrett* v. *Love,* 48 Iowa, 103.) In a tax deed there is no intention of parties to be proved *aliunde;* the sale is hostile to the owner. The description must be certain of itself, and not require evidence *aliunde* to render it certain. (Blackwell Tax Title, pp. 124, 152; *Tallman* v. *White,* 2 N. Y. 70.) Description, thirty-seven and one third acres in section 11, T. 1 S. of R. 1 E, in assessment roll, delinquent list, and sheriff's return, is void for uncertainty. (*People* v. *Cone,* 48 Cal. 429; *Keane* v. *Cannovan,* 21 Cal. 301; *People* v. *Andreas Pico,* 20 Cal. 596; *Kelsey* v. *Abbott,* 13 Cal. 609; *Griffin* v. *Creppin,* 60 Me. 270; *Gardner* v. *Brown,* 1 Humph. 354; *Ronkendorff* v. *Taylor,* 4 Peters, 349–363; *Roberts* v. *Deeds,* 57 Iowa, 320; *Shackleford* v. *Bailey,* 35 Ill. 387; *Yandell* v. *Pugh,* 53 Miss. 296.) If the description of the tract sold is general and void for uncertainty, the defect cannot be cured by inserting a proper description in the certificate of purchase or collector's deed. (*Roberts* v. *Chan Tin Ben,*

23 Cal. 260–267; *Burlew* v. *Quarrier*, 16 W. Va. 109; *Henderson* v. *Staritt*, 4 Sneed, 470.)

*James K. Kelly,* for Respondent

In listing the land (for taxation) it must be described with particularity sufficient to afford the owner the means of identification, and not to mislead him. A description that would be sufficient in a conveyance between individuals would generally be sufficient here. (Cooley Tax. 382, 383; *Kelly* v. *Herrall*, U. S. Dis. Ct. for Oreg. June, 1884.) The description in the tax deed offered in evidence by defendant is sufficient. (*Bank of Mo.* v. *Bates*, 17 Mo. 583.) A tax deed, informal and defective in substance, is admissible to show color of title in the defendant to bring him within the protection of the Statutes of Limitation. (*Edgerton* v. *Bird*, 6 Wis. 527; *Sprecker* v. *Wakeley*, 11 Wis. 432; *Lindsay* v. *Fay*, 25 Wis. 460; *Leffingwell* v. *Warren*, 2 Black, 599; *Pillow* v. *Roberts*, 13 How. 477; *Wright* v. *Mattison*, 18 How. 50; Cooley Tax. 382.) The special finding of the jury, coupled with the tax deed and the deed of Gideon Tibbetts and wife to I. B. Smith, dated March 17, 1874, show that he was holding the premises adversely under color of title for more than ten years. "The act of taking possession if otherwise unexplained will be referable to the paper title, and understood as making a claim under it." (*Wright* v. *Mattison, supra; Dillingham* v. *Brown*, 38 Ala. 313; *Finlay* v. *Cook*, 54 Barb. 23; *Chapman* v. *Templeton*, 53 Mo. 463.)

THAYER, J.—This appeal is from a judgment of the Circuit Court for the county of Multnomah. The appellant commenced an action in said court to recover the possession of certain real property, consisting of a tract of thirty-seven and one half acres of land situated in said county of Multnomah. The complaint is in the usual form to recover the possession of real property. The respondent interposed several defenses, viz.:—

*First.* That the land was owned by one I. B. Smith, and in his possession at the time of his death, September 3, 1882, and that the respondent was the administrator of the said Smith.

*Second.* That on the 13th day of June, 1866, the land was sold by the sheriff of Multnomah County for taxes due from the appellant, which were delinquent, and was purchased at said tax sale by said I. B. Smith; that no redemption thereof having been had, a deed was duly executed by the sheriff of said county to the said I. B. Smith, on the 3d day of July, 1868; that said deed was duly recorded in the office of the clerk of said county, on the 2d day of November, 1870, since which time the said I. B. Smith was in the actual possession of said tract of land until the time of his death; and that no action, suit, or proceeding for the recovery of said land was commenced within three years from the said 2d day of November, 1870, the time of recording the tax deed. *Third.* That neither the appellant, his ancestor, predecessor, or grantor, was seized or possessed of the premises within ten years prior to the 3d day of September, 1882, when said I. B. Smith held and possessed the same adversely to the pretended title of the appellant for more than ten years before the time of his death, under a claim of title in fee simple.

The appellant filed a reply, in which he denied the several defenses set up by the respondent, and the issues so formed were tried by the court and a jury duly impaneled. The appellant, upon the trial, gave in evidence a deed executed by Gideon Tibbetts and wife to himself, dated March, 24, 1858, of the land in controversy; also a patent from the United States to the said Gideon Tibbetts and wife, bearing date January 31, 1873, of a larger tract of land, and which included the land in dispute. The said deed to appellant contains full covenants of assurance, and the patent was issued under the Oregon donation law. The premises in question are a part of the said donation claim that inured under the said law to Mrs. Tibbetts. The respondent upon his part gave in evidence the tax deed alleged in his answer. When it was offered in evidence, counsel objected to its introduction upon the grounds that it was incompetent and immaterial, as it contained no sufficient description of the land. The description in the deed is as follows: "Thirty-seven and one half acres of land in section 11, T. 1 S., R. 1 E., known as

'Smith's farm,' in Multnomah County, State of Oregon." The deed also contained a recital as follows: "The said property having been duly assessed for the fiscal year, 1865, to the said Y. A. Smith." When the objection was made to the introduction of this deed, the respondent's counsel stated to the court that he would show that in the month of June, 1866, said land was known as Smith's farm in the neighborhood where it is situated, and thereupon the court overruled the objection, and said deed was read in evidence to the jury.

Gideon Tibbetts, having been called as a witness, testified that he was very well acquainted with the land; that it was a part of the donation land claim of himself and wife; that his claim was in sections 10, 11, and 12, mostly in section 11, in the township and range aforesaid. The witness was then asked if he knew where a tract of land lies, described as "thirty-seven and one half acres of land·in section 11, T. 1 S., R. 1 E., known as 'Smith's farm'"; to which he answered: "I know of a tract of that size that Smith pretended to own; he paid me for it; we always called it Mr. Smith's land, that piece of ground." Said witness, in answer to another question asked by the respondent's counsel, testified: "This piece of land was known there as Smith's land, referring to June 6, 1866, and it is known to-day, I believe, as that. I have never heard of any other tract of land in that section that has been known as Smith's land, or as the Smith land." This evidence was taken against the objection of appellant's counsel as being incompetent and immaterial; and there was no other evidence tending to show that the premises in controversy were in 1866, or at any other time, known as Smith's farm. Said witness also testified that as much as fifteen years ago I. B. Smith, deceased, occupied a house which had been moved on the land in controversy for a school-house, but never used for such purpose; that I. B. Smith, deceased, slept in it and cooked there; and that some wood-choppers, cutting wood on the land in his employ, for a time slept there, and cooked their meals in it. He also testified that for the last five or six years of his life I. B. Smith resided on the land in controversy, in a small house built by himself, and had

a small piece under cultivation. Another witness, John Camp-
bell, testified that in 1878 or 1879, he, at the request of I. B.
Smith, surveyed the land in controversy for him, and that he
after that time, and until his death, resided upon it; and there
was no other evidence tending to show adverse possession of
the land in controversy by I. B. Smith. Respondent then
offered in evidence a deed of Gideon Tibbetts and wife to
Isaac B. Smith, dated the 17th day of March, 1874, for the
land in controversy, to the introduction of which the appellant
objected, because it was incompetent and irrelevant, which
objection the court overruled, and allowed the respondent to
read the same to the jury; to which ruling of the court the
appellant then excepted. The respondent then rested, where-
upon the appellant moved the court to strike out from the evi-
dence the tax deed offered in evidence by the respondent, and
to withdraw it from the jury; which motion the court overruled,
and appellant excepted.

The respondent having rested, the appellant gave in evidence
a certified copy of the assessment roll of said county of Mult-
nomah for the assessment of taxes for the year 1865, and also a
certified copy of the notice of said sale of said land for delinquent
taxes, and then requested the court to direct the jury to find a
verdict for the appellant, which the court refused. The said
assessment roll and notice of sale contained the same description
of the premises assessed and sold as the tax deed, except that the
words, "known as Smith's farm," were not included therein.
And thereupon the court proceeded to charge the jury; and
among other instructions, submitted the following:—

"If you find the fact to be that there was in section 11, T. 1
S., R. 1 E., and on the donation land claim of Gideon Tibbetts,
a parcel of land conforming in size and shape to the land in con-
troversy, and known in the year 1866, about July of that year,
as 'Smith's farm,' and that there was no other similar piece of
land in that section that was so known, then your verdict should
be for defendant."

To the giving of this instruction the appellant then excepted,
because there was no evidence tending to show that in 1866, or

at any other time, the land in controversy had been known as
" Smith's farm." The court then, at the request of the respond-
ent, submitted to the jury the special question: " How long, if
for any time, was Isaac B. Smith, deceased, in the actual posses-
sion and a resident upon the land in controversy?" and asked
the jury to find a special verdict upon the said question; to the
submission of which special finding the appellant objected,
because it was incompetent and immaterial, and because there
was no evidence tending to show that there had been any adverse
possession of said lands before the commencement of this action.
A general verdict was rendered for the defendant, and the special
finding was answered: "Since 1869." The appellant filed a
motion to set aside the general verdict, and also to set aside the
special verdict, both of which were refused by the court, and the
judgment appealed from was entered.

The questions presented for the consideration of this court
are, the admission in evidence of the tax deed, and the deed
from Tibbetts and wife of I. B. Smith, of March 17, 1874; the
refusal of the court to strike out from the evidence the tax deed;
the refusal to direct a verdict for the appellant; giving the instruc-
tion excepted to by the appellant; submitting the special matter to
the jury; and in refusing the motion to set aside the special and
general verdicts. There was certainly no error in submitting
the two deeds in evidence. They were relevant and pertinent
to the issues, and the court should not have been compelled to
stop at that stage of the proceeding to consider their effect,
whatever might have been its final conclusion as to their
materiality. The respondent had in his answer alleged title to
the premises in I. B. Smith, and set up as another defense the
Statute of Limitations. He had a right, therefore, to give in
evidence any proof that tended to establish either defense. It is
the usual practice of courts at *nisi prius* to receive such proofs in
the first instance, and afterwards instruct the jury as to their
effect. This is the more prudent course, and an appellate court
would not be justified in reversing a judgment upon such ground,
unless it could plainly perceive that the rights of the opposite
party had been prejudiced in consequence thereof. Nor could

the Circuit Court have properly stricken out from the evidence: the said tax deed, even if its description of the premises were imperfect. It was still admissible to show that said I. B. Smith was holding under color of title. It was competent evidence, in connection with proof of possession, in order to establish the defense of the Statute of Limitations. (*Pillow* v. *Roberts* 13 How. 477; *Wright* v. *Mattison*, 18 How. 50.)

The request of the appellant that the court direct a verdict in his favor was properly overruled. The court had no such power over the jury as that. It had no right except to state to them "all matters of law which it thought necessary for their information in giving their verdict." It had no authority to present the facts in the case, and was required to inform the jury that they were the exclusive judges of all questions of fact. (Civ. Code, § 198.) The appellant had a right, when the evidence was closed, to submit in distinct and concise propositions the conclusions of fact which he claimed to have been established, or the conclusions of law which he desired to be adjudged, or both. The conclusions of law would, of course, have been decided by the court; but the conclusions of fact would have had to have been submitted to the jury. (Civ. Code, §§ 237, 238, 239.) The court had the right, undoubtedly, to inform the jury as to what it was necessary for the respondent to prove, in order to establish his defenses; and if there were no evidence, or it were not sufficient to make out any of the defenses, and the jury decided wrong, the court should have set their verdict aside. A jury may err in their decision, may conclude that a party has maintained a defense when he has not, but the law does not presume they will do so any more than it will presume that a court will mistake the law. In the event they do, however, it can be corrected without the court having to get into the jury-box. The province of a jury is as certain and sacred under our law as that of the court, and the functions of the former can no more be usurped than those of the latter. The appellants could not have expected the court would set aside the verdict, unless it concluded that its charge to the jury, before referred to, was erroneous. The court told the jury, in the charge, that if they

XII. OREG.—24.

found that there was in said section, township, and range, and in the donation claim of said Tibbetts, a parcel of land conformable to that in controversy, and known as "Smith's farm," at the time referred to by the court, and that there was no similar piece of land in that section so known, their verdict should be for the respondent; and as the jury returned a verdict for the respondent, it is quite probable they found such fact. The court could not, in view of that instruction, have consistently set the verdict aside. Nor can this court conclude that there was error in denying said motion, without determining that there was error in the said instruction.

The question submitted by the court for the special finding of the jury was of very little importance. The answer returned by them was entirely inconclusive in itself to establish the defense of the Statute of Limitations. The length of time Isaac B. Smith was in the actual possession of and a resident upon the land in controversy was entirely immaterial, unless he was holding during the time adversely to the appellant. It was claimed by the respondent's counsel, upon the argument, that the fact that Isaac B. Smith purchased the premises at the tax sale, and put the deed upon record, was evidence that his holding was as an owner. However that may be, neither the question nor finding of the jury in answer thereto injured the appellant, and is of no advantage to the respondent on the appeal, as it does not appear that the general verdict was rendered upon the defense that the appellant had not been seized or possessed of the premises within the period of ten years. It is as likely to have been rendered under the instruction as to the effect of the tax deed, or upon the three-years limitation, or upon the other defense. The consequence, therefore, is that the respondent must maintain the correctness of the said instruction, to prevent a reversal of the judgment. And if it be correct, then the appellant's other points fall to the ground, as that is the sum of all the alleged errors in the case.

After a very thorough consideration of the instruction relating to the effect of said tax deed, in case the jury found that there was a parcel of land answering to the description contained in it, we

have concluded that the Circuit Court properly gave it.   The evidence to support such a finding was very slight and unsatisfactory; but when there is any evidence, however meager, calculated to prove any fact in a case, it becomes the province of the jury to weigh it and determine its effect; and whatever may be our view as to the correctness of the determination, we have no right, under our system of procedure, to reverse a judgment in consequence of an instruction to the jury that if they find a certain fact they should find a verdict in a certain way, when the fact would authorize such a finding or conclusion, and there is evidence in the case which fairly tends to support it.   The description in the tax deed is sufficiently certain upon its face, that is, it was capable of being made certain, if the land therein described could be ascertained; and the evidence upon that point, hereinbefore referred to, showed, in the opinion of the court, a case sufficient to be submitted to the jury.

The counsel for the appellant contended, upon the argument, that the land in question had no such notoriety as would justify any reference to it by name as descriptive of it.   It is probably true that it was not extensively known by any name.   But it consisted of thirty-seven and one half acres situated in the city of East Portland, was a part of a certain donation land claim, several deeds to it had been executed, the said I. B. Smith had moved onto it some fifteen years previous, had since then had it surveyed, and for five or six years prior to his death had lived upon and cultivated it.   There could have been, under the circumstances, no mistake as to the identity of the land assessed and sold for taxes.   The people in that vicinity unquestionably were acquainted with it, and well knew, as a matter of fact, what piece of land was intended from the advertisement of the delinquent tax-list and the sheriff's deed.   The case is by no means free from doubt, but it comes here upon the finding of a jury upon the questions involved, and after the court who tried the case has refused to set the finding aside.

The judgment will therefore be affirmed.