[Filed June 1, 1886.]

## JOHN MINTER ET AL. *v.* WILLIAM DURHAM ET AL.

TAX DEED—DESCRIPTION OF LAND.—A description of land in a sheriff's deed for taxes as "Minter's Donation, T. 1 S., R. 2 W., 320 acres," sufficiently identifies the land, if there is in such township a donation claim answering the description, and no other similar piece of land therein.

SAME—RENTS AND PROFITS—EVIDENCE.—Where a co-tenant who has redeemed the common property from a sale for taxes claims the right to

retain the certificate of sale till his co-tenants shall have reimbursed him their share, it is clearly error to reject evidence offered to show that he was at the time in the receipt of the whole of the rents and profits of the estate.

Taxes—Payment of by Co-tenant—Redemption by.—The payment of taxes on land by a co-tenant in possession inures to the advantage of all. And this rule equally applies where lands have been sold for taxes to a stranger to the title, who afterwards assigns his certificate of sale to a co-tenant. Such assignment will be taken as a redemption for the benefit of the whole estate.

Pleading and Practice—Co-tenants—Ejectment—Misjoinder of Parties.—It seems that co-tenants cannot join as plaintiffs in an action of ejectment; but a defendant waives the irregularity by answering over.

Appeal—What Errors Considered on.—An appellant, on appeal to this court, may take advantage of an error committed against him in the court below, notwithstanding a defect in his cwn pleadings, unless the defect be such as would have been cause to arrest a judgment in his favor.

Washington County.    Plaintiffs appeal.    Reversed, and new trial ordered.

*James K. Kelly* and *S. B. Huston,* for Appellants.

A co-tenant in possession cannot assert against his co-tenants, either at law nor in equity, a title derived from purchase of the common property at a sale for delinquent taxes. (Sedgwick & Wait on Trial of Title to Land, secs. 291, 292; Cooley on Taxation, 345–347; Freeman on Co-tenancy, sec. 158; *Olney* v. *Sawyer,* 54 Cal. 379; *Davis* v. *King,* 87 Pa. St. 261.) John N. Durham became *a tenant in fact* as well as a tenant in common of the Minter claim when he entered into possession under Grobel. Where the land is occupied by a tenant who, by his lease, has obligated himself to pay the taxes, the law will not permit him to neglect this duty and cut off the lessor's title by buying in the land at a tax sale. (Cooley on Taxation, 345; *Van Horne* v. *Fonda,* 5 Johns. Ch. 388.) The three years' limitation in the tax law does not apply in favor of a party who was in possession

under some other claim at the time of obtaining the tax title. It intends that the party who seeks the benefit of the limitation shall enter or shall have entered into the actual possession of his tax deed. (*Gilman* v. *Riopelle*, 18 Mich. 145, 164; *Lacey* v. *Davis*, 4 Id. 140; S. C., 66 Am. Dec. 524; *Douglas* v. *Dangerfield*, 10 Ohio, 152.) A tenant in common will not be permitted to assert a tax title acquired by him for taxes imposed on the joint property. Usually such purchase will be held to be a payment of the taxes, or the extinguishment of an adverse claim or cloud or lien, and will inure to the benefit of all the joint owners. (*Muthersbough* v. *Burke*, 6 Pac. Rep. 252; Cooley on Taxation, 346, and authorities cited; *Lloyd* v. *Lynch*, 28 Pa. St. 419.) Where a tenant in common purchases the common property at a tax sale, he will not be permitted to invoke the statute of limitations of three years in aid of his title. (*McMahon* v. *McGraw*, 26 Wis. 622; *Austin* v. *Barrett*, 44 Iowa, 488; *Burns* v. *Byrne*, 45 Id. 288; 2 Desty on Taxation, 936.)

*Raleigh Stott* and *W. D. Hare*, for Respondents.

In ejectment, under the Code, the plaintiff must allege and show a right of possession. (Bliss on Code Pleading, secs. 222–225; *Cincinnati* v. *White*, 6 Pet. 431.) Tenants in common could not join at common law in ejectment. (1 Ch. Pl., 16th ed., p. 71.) The Code does not modify or change the rule. The description was sufficient. The deed conveyed the legal and equitable title to John N. Durham. (*Smith* v. *Shattuck*, 12 Or. 362; *Kelly* v. *Herald*, 10 Saw. 161.) Durham had a right to purchase the certificate of sale, and hold the land thereunder, at least until his co-tenants redeemed from him, and he has not been a tenant in common with the widow or her heirs since December 27, 1876. (Freeman on Co-tenancy, sec. 158; *Mills* v. *Tukey*, 22 Cal. 377.)

THAYER, J. The appellants herein commenced an action against the respondents to recover possession of real property. The following is the substance of their complaint filed therein: " That plaintiffs are owners in fee-simple, as tenants in common, of four undivided sixths of that certain real property in Washington County, Oregon, known and described as the donation land claim of J. Minter and wife, in township 1 south, of range 2 west, of the Willamette meridian, in Washington County, Oregon, to wit, four sixths of J. Minter's half of said claim, and four sixths of his said wife's half thereof, and defendants are in possession of, and wrongfully withhold the same from plaintiffs, to plaintiffs' damage in the sum of $500."

The respondents filed a demurrer to the said complaint, specifying several grounds thereof, which the court overruled, and they thereupon filed an answer, of which the following is the substance: " Deny that the plaintiffs are the owners in fee, or that they are entitled to any part of the lands described in the complaint as the wife's half of the donation land claim of J. Minter and wife. And deny that they wrongfully withhold the possession of the premises described in the complaint from plaintiffs."

" Defendants for a further answer allege that the defendants William Durham and John N. Durham are the owners in fee as tenants in common with plaintiffs, each of an undivided sixth part of the east half of said donation claim, being the husband's half of said claim.

" They further deny that the defendant Amanda Durham has any interest in the subject-matter of this action.

"And for a further answer they allege that Montreville Fisk is the owner in fee of the west half of said donation land claim, and that defendants William Durham and

John N. Durham are in the possession of said land under a contract to purchase from said Fisk.

"They further allege that defendants William Durham and John N. Durham have been in the adverse possession of the west half of said claim for more than ten years before the commencement of this action.

"They further allege that the defendants William Durham and John N. Durham were in the peaceable possession, adverse to the plaintiffs, of the west half of said donation claim, holding under a tax title, and allege that in the year 1874 the sheriff of Washington County levied on said west half, to satisfy the sum of $14.85, delinquent taxes assessed upon the interest of one Mary E. Snodgrass in said land, the same being delinquent taxes assessed for the year 1873. That the same was sold on the fifth day of June, 1874, to W. R. Jackson, and that on the twenty-seventh day of June, 1876, said land, not having been redeemed, and said W. R. Jackson having assigned his interest in said land to said John N. Durham, the sheriff of Washington County executed a deed to said John N. Durham. That said deed was recorded on June 27, 1876, and said William and John N. Durham have been in the possession of said land ever since.

"That said Mary E. Snodgrass is the ancestor of plaintiffs, and through whom they claim their title to the land, and that said Fisk has succeeded to all the right and title of said W. R. Jackson."

The appellants interposed the following in reply to the new matter of defense set forth in the answer: "Deny all the material allegations set up as new matter in the answer, and especially they deny that defendant William Durham or John N. Durham paid all the taxes assessed on said premises, and aver that Julia A. Coleman, one of plaintiffs, paid the taxes assessed on the same, for the year 1874, and redeemed the said premises from a tax

sale made by the sheriff of Washington County to W. R. Jackson, on June 3, 1875, said redemption having been made on the eigthteenth day of September, 1875, from said Jackson, the purchaser at said tax sale, by the plaintiff, Julia A. Coleman, for the sum of $27.16, she, the said Julia A. Coleman, being a daughter and heir at law of J. Minter and wife."

Plaintiffs in their reply further allege "that the defendants, having entered into the possession of said lands, claiming to be tenants in common with plaintiffs, collected all the rents, and received the profits of the said premises, and used such rents and profits to purchase the tax title from Jackson."

They further state in the reply that the taxes were levied on the whole of the donation land claim in gross.

The issues were tried by jury, who rendered a verdict therein that appellants were the owners in fee, and entitled to four sixths and the respondents to two sixths of the east half, and that the respondents were the owners of the west half of said claim; upon which verdict judgment was entered, and from the part of it adjudging that the respondents were owners of the west half of the claim, the appeal is taken.     It appeared in evidence that Jacob Minter and his wife, Mary E. Minter, settled upon said land claim some time in 1854 or 1855, as a donation land claim, under the act of congress of September 27, 1850; that in 1861, Jacob Minter died upon the claim, leaving said Mary E. Minter his widow, and the following-named children: Amanda D., since married to Samuel D. Laughlin; Sarah Jane, married to Josiah Johnson; Julia A., married to William Coleman; Samantha, married to Jacob Clearwater; John Minter, and Robert Minter. Mrs. Minter was again married to a Mr. Snodgrass, who died prior to 1873, and after his death, and in that year, she and said Julia A. Coleman, Robert Minter, and John

Minter, moved from the state to Modoc County, California, where they have since resided. When Mrs. Snodgrass left the donation claim, she leased it to one Jasper Grobel, who, in consideration thereof, agreed to pay the taxes which should be assessed thereon. The dwelling-house was on the west half, also the orchard of fruit-trees; but the claim had not then been divided.

In the early part of June, 1874, John N. Durham came to Grobel and told him that he had bought the interest of said Amanda Laughlin, and that he, Durham, had a right to the possession of the land, and demanded the rents due from Grobel to Mrs. Snodgrass, under the right of having bought Mrs. Laughlin's interest. Grobel then delivered up the possession of the Minter donation claim to Durham, and paid him the rent that he was owing on the lease with Mrs. Snodgrass. Durham went into possession before the crop was harvested and gathered it himself, and lived in the Minter house some eighteen months.

The tenant Grobel testified that the rental value of the premises was about $100 per annum, which John N. Durham received ever afterwards, either by himself or persons whom he placed in possession. It further appeared in evidence that Amanda D. Laughlin and her husband conveyed her interest in her father's part of the donation claim to John N. Durham on the 16th of October, 1873, for $200. That Sarah J. Johnson and her husband conveyed all her interest in her father's part of the donation claim to one Isaac Butler on October 15, 1878, for fifty dollars. Jacob Minter and his wife resided on and cultivated their donation claim more than four years before he died, but no proof of such residence and cultivation was made before the twenty-seventh day of December, 1876, when such proof was made by John N. Durham, he having in the mean time bought the tax

certificate from W. R. Jackson, and procured the alleged sheriff's tax deed under which defendants claim title to the west half of the donation claim; being that portion set apart by the register and receiver on the 27th of December, 1876, as the part inuring to Mrs. Snodgrass.

The questions to be determined upon the appeal involve mainly the correctness of the rulings of the Circuit Court, in excluding testimony offered by the appellants, and in refusing instruction to the jury requested on their part to be given.    The appellants made out a clear *prima facie* case when they proved the settlement and occupation of the donation claim by Jacob Minter and wife, in compliance with the conditions of the donation act; and that they were their heirs at law.   It then devolved upon the respondents to prove that the appellants had been divested of their title and of its investment in themselves or some third person.   They established an ownership in themselves to two sixths of the east half, or husband's portion thereof, through the purchase by John N. Durham from Amanda D. Laughlin, and that of Isaac Butler from Sarah J. Johnson, which purchases were made at the respective dates, October 16, 1873, and October 15, 1878.   But their pretended ownership of the west or wife's half is very questionable.   That depends upon the validity of the tax deed, executed by the sheriff of Washington County to said John N. Durham, which is set out in the respondents' answer.   The appellants claim that said deed was void, upon two grounds: 1. That the description of the land sold is too indefinite; and 2. That it was procured by fraud.   Upon the first ground, I think the appellants are concluded by the rule laid down in *Smith* v. *Shattuck,* 12 Or. 362.   The description of the premises was, "Minter's donation, township 1 south, range 2 west, 320 acres."   The court told the jury, in effect, that if they found from the evi-

dence that there was in said township and range a par-
cel of land answering to the description, and no other
similar piece of land in the township, it would be suffi-
cient. I do not think we can distinguish between the
two cases. The description was a rather slight *datum*
from which to ascertain the land sought to be conveyed,
but I have no doubt but that the claim in question was
intended, nor do I believe that the jury, in view of the
extraneous evidence upon the subject, could have been
mistaken about it. The description was capable of be-
ing made certain. A donation claim of a party in Ore-
gon is generally well known throughout a wide extent
of the country, and is about as certain a description of a
parcel of land as can be given.

The more serious question in the case arises out of the
circumstances under which said Durham procured the
deed. Being a co-tenant with Mrs. Snodgrass and her
children—who retained their interest in the claim—and
having the possession of their interests as well as of his
own, and in possession of accrued rents, I do not see
how the said Durham could have bought in the interest
of his co-tenants and appropriated it to himself without
violating the principles of natural justice. The law will
not, certainly, tolerate any such course of conduct. He
occupied a relation to the co-owners in the nature of
that of bailiff, and any attempt upon his part to take
advantage of his situation would be such a fraud as
would render the act a nullity. The payment of taxes
by a co-tenant inures to the benefit of all. The question
is commented upon in Cooley on Taxation, pages 345
and 346, and notes, and the rule is too well understood
to require any further citation of authorities. It is
claimed upon the part of the respondents that the tax
upon which the property was sold having been purchased
prior to the time said Durham purchased the interest of

Amanda D. Laughlin, the rule mentioned does not ap-
ply.   The assessment, as I understand, was made in
1873, and the purchase in 1874.   The sale of the land
for taxes was made in the latter year, but prior to Dur-
ham's purchase Jackson had bid it in, and Durham,.
after his purchase of the one share, redeemed from Jack-
son.   The deed from the sheriff upon the tax sale was
executed June 27, 1876, nearly two years after Durham
became interested in the estate.   I cannot see that it
changes the principle at all, whether the assessment was
made before or after Durham's purchase of the heir's
interest.   The tax at the time was a common charge—
was a charge upon the whole estate, and his redemption
should be regarded as having been for the benefit of all..
He had received from Grobel, no doubt, ample money
belonging to the estate to pay it off, and it would be a
gross fraud to allow him to appropriate the estate en-
tirely to his own use.   The tax was evidently assessed to
the whole estate—assessed to " Minter's donation."   The
claim at that time had not been divided in the land-office,
and the tax deed shows that it was the claim that was as-
sessed and sold.   Durham has the same right to contend.
for the entire east half, under his deed from the sheriff,.
as the west half.   The respondents' counsel also claim that
the tax deed operates to convey, under the laws of the state,
a legal and equitable title to the purchaser; that upon the·
delivery of the deed, the proceedings relating to the levy,.
assessment, collection of the tax, and also of the prop-
erty, are presumed to be regular, and that such pre-
sumption cannot be disputed without proving the·
matters specified in section 90 of chapter 57 of Miscel--
laneous Laws; viz., "fraud in the assessment or collection·
of tax, payment of the tax before sale, or redemption
after the sale; that the payment or redemption was pre-
vented by the fraud of the purchaser, or that the prop-

erty was sold for taxes for which the owner was not liable," etc.

The difficulty of the respondents' case is in Durham taking a deed where he had no right to take it. When he paid to Jackson the $14.85 and took an assignment of the certificate of sale from the sheriff, he extinguished the tax; it was a redemption; it relieved the land from the charge, and he had no more right to obtain the deed than he would have had if his co-tenants had especially furnished him the money and directed him to pay the charge, and he did so, but took the assignment of the certificate and subsequently secured the deed. The law making a tax deed good in certain cases does not extend to such an act; nor could the legislature have made it broad enough to cover acts of that character. It has no power to legalize a wrong. It could not authorize a larceny, nor donate to a party the fruits of a fraud. It is confined to "rightful subjects of legislation." Durham and his successors in interest have no right to invoke the aid of said provision. It was not intended to include purchasers at tax sales, who maintain a particular relation to the owner of the property, otherwise a guardian could bid in the property of his ward at a tax sale and shield himself behind the statute, which would outrage justice.

It is further contended by the respondents' counsel that Durham had the right to purchase the certificate and hold it until the appellants redeemed it from him. But he certainly could not claim that right as long as he was in receipt of the rents and profits of the property. The appellants offered to show the amount he had received from Grobel, and the court excluded the evidence. This was clearly error. I think it very likely that a co-tenant, under certain circumstances, would be entitled to hold such certificate until the other co-tenants paid him their share, but he would have no right to attempt

thereby to obtain an absolute title to the property. It would constitute a charge in his favor upon the property, which he would be entitled to enforce against it, and that would, in my opinion, be the extent of his right.

Said counsel also insist that their demurrer to the complaint was well taken. Strictly I think it was. I doubt very much whether the appellants had the right to join as plaintiffs in the action. Tenants in common hold by unity of possession, but they hold several and distinct freeholds, and under our statute the action to recover possession of real property includes a recovery of the estate which the demandant has in it, and which must be a legal estate. The privity between them is not, in my opinion, sufficient to enable them to join. Again, the complaint in the action is defective in form. It contains no express allegation that the appellants were entitled to the possession; but I think the respondents waived both of these questions by answering over. At all events, they are not in a situation to raise them upon this appeal, as they have not appealed, and the complaint is not totally defective. Judgment upon a verdict in favor of the appellants thereon could not be arrested *non obstante veredicto,* and I think that ought to be the test where a respondent in such a case claims that the appellant would not be entitled to a judgment on account of the defectiveness of the latter's pleading.

The question has often arisen in this court whether an appellant had a right to complain on account of an error committed against him in the trial court when his own pleading was faulty. It has always seemed to me in such cases that the rule should be this: If the party complaining would not, in consequence of the defectiveness of his pleading, be entitled to judgment, he ought not to be heard to complain of the error, as it could not have injured him. If a plaintiff omits from his complaint a

material allegation, he would not be injured by an error committed during the course of trial of the action, as he would not have been entitled to judgment in any event; but where the objection to the pleading has been waived by answering it, or where the defect would be cured by a verdict, the party is entitled to be relieved against an error committed at the trial prejudicial to his case. The Circuit Court evidently mistook the law relating to the questions involved in the case, and it must go back for a new trial. The jury should have been instructed that the purchase of the estate sold for the non-payment of taxes by a co-tenant in possession, and receiving the rents and profits, vests no title to the property in such purchaser; nor does it entitle him to invoke the statute of limitations of three years in aid of his claim of title.