## OREGON RAILROAD CO. *v.* UMATILLA COUNTY.

### 81 Pac. 352.

TAX LEVY—NEED OF ENTERING ESTIMATE IN JOURNAL.

1. It is not necessary to the validity of a tax levied by the county court for county purposes that the estimate made by the court shall be entered at length in the journal. The requirements of Section 3084, B. & C. Comp., that the court "shall estimate the amount of money to be raised, * * and apportion such amount, * * and such determination shall be entered at large in its records," are directory only, and not jurisdictional, the power to levy the tax being conferred by Section 3085, which provides that at a stated time each year "the county court * * shall levy a tax," sufficient to defray the expenses of the county.

TAX LEVY—NECESSITY OF SIGNING JOURNAL ENTRY.

2. Where the journal entry of an order levying a tax was signed by the county commissioners before any attempt was made by the county to enforce the tax, the fact that it was not so signed at the time a taxpayer instituted a writ of review to set aside the assessment is not ground for annulling the same.

PURPOSE OF WRIT OF REVIEW.

3. A statutory writ of review is substantially the same as the common-law writ of certiorari, and will lie when an inferior court or tribunal has exceeded its jurisdiction, or exercised its judicial functions illegally or contrary to the course of procedure applicable to the matters before it.

NEED OF CERTIFICATE ON ASSESSMENT ROLL.

4. Under B. & C. Comp., § 3057, providing that the assessor shall procure from the clerk a blank assessment roll, and forthwith proceed to assess all the taxable property within the county, and return such roll to the clerk on or before a certain time, with a full and complete assessment of such taxable property entered therein, an assessment roll becomes a public document when returned, though not formally certified or identified by the assessor, no certificate being required.

ASSESSMENT ROLL—ABBREVIATED NAME OF TAXPAYER.

5. An assessment of property to "O. R. & N. Co., The," is a sufficient designation of the owner, where such owner is commonly known by those letters, which are an abbreviation of its full name.

ASSESSMENT ROLL—REPEATING NAME OF TAXPAYER.

6. Where a taxpayer is assessed with several separate pieces of property, it is not necessary that the name be entered in the roll opposite each description, but

it is enough that it is entered at the commencement of the assessment, followed by the list of the property under the proper heads, no other name intervening.

ASSESSMENT OF PROPERTY UNDER DIFFERENT MUNICIPALITIES.

7. Where property is subject to assessment in different districts it is proper to enter the name of each on the roll with the value of the property under each name.

WRIT OF REVIEW DISCRETIONARY.

8. The writ of review in Oregon is substantially the common-law remedy of certiorari, and, like that remedy, it is granted or refused at the discretion of the court. In tax matters it is used sparingly and not to set aside an entire levy for irregularities or inequalities of assessment, or for mere insufficiency of description, unless such description is void on its face.

SUFFICIENCY OF DESCRIPTION FOR TAXATION.

9. A description of real property which would be sufficient in a deed or contract is sufficient in a tax roll.

EVIDENCE TO IDENTIFY PROPERTY ASSESSED.

10. Parol evidence is admissible in aid of an assessment for taxes to identify the land referred to or to aid in the interpretation of the record.

SUFFICIENCY OF DESCRIPTION FOR TAXATION — REVIEW.

11. A description of property of a railroad company as certain lots "Res. Add. Pend., City of Pendleton," or a stated number of miles of "R. R. Bed," or of "R. of W." is not so defective as to be void on the face of the record, and therefore on a proceeding to review the acts of the assessor it must be sustained.

ESTOPPEL TO OBJECT TO DESCRIPTION ON TAX ROLL.

12. A taxpayer who has appeared before an equalization board and applied for a reduction in the valuation of his property cannot afterward claim in a proceeding against the county that the description of such property is defective.

From Umatilla: WILLIAM R. ELLIS, Judge.

Statement by MR. JUSTICE BEAN.

This is a proceeding by writ of review instituted by the Oregon Railroad & Navigation Co. to annul and declare void an order of the county court of Umatilla County, levying a tax upon the property of the plaintiff, as shown by the assessment roll for the year 1903. The petition for the writ contains many averments which are denied by the answer or return, but, as questions of fact cannot be tried in this proceeding, they will not be further noticed. From the return to the writ it appears that each page of the assessment roll for 1903 was divided horizontally into 29 lines, and perpendicularly into 34 columns. At the

top of the perpendicular columns were printed the words:
"Name of Taxpayer"; "Description of Land"; "Section";
"Township"; "Range"; "Name of Recorded Town or City";
"No. of Miles R. R. Bed, Tel'p, Tel'g, Etc. Line"; "School
Districts"; "Road Districts"; "Name of Incorporated City
or Town," and the like. In making up the roll, the assessor
subdivided, described and valued the property of each tax-
payer with reference to its location in the several school
and road districts and incorporated towns and cities of the
county, and therefore the assessment of the plaintiff cov-
ered nine or ten pages of the roll. At the upper left-hand
corner of each page of such assessment, in the column
headed "Name of Taxpayer," are written the letters and
word "O. R. & N. Co., The," and at the bottom of the page
the abbreviated word "Contd," but the name of the tax-
payer is not entered in the roll opposite the description of
each separate parcel of property, nor is it indicated by
ditto marks.

Among the property assessed to the plaintiff are some
22 lots in three different blocks, in what is entered in
the column headed "Name of Recorded Town or City" as
"Res. Add. Pend.," and in the column headed "Name of
Incorporated City or Town" as "Pendleton." So that the
description as it appears in the roll, taking one lot as an
example, would be "Lot 6, Block 3, Res. Add. Pend., City
of Pendleton." There is also assessed to the plaintiff tel-
egraph lines, which were entered in the column headed
"Description of Land" as "One Wire System Telegraph"
or "Two Wire System Telegraph," as the case might be,
and in the columns headed "Name of Incorporated City
or Town," "Road District," and "School Districts," are
entered the names of the towns and numbers of the dis-
tricts, and, in the column headed "No. of Miles R. R. Bed,
Tel'p, Tel'g, Etc. Lines," figures indicating the number of
miles of line assessed, so that the description would be,**

ASSESSMENT ROLL FOR UMATILLA COUNTY, FOR THE YEAR 1903.

| Name of taxpayer. | Description of land. | Name of recorded town or city. | No. of miles R. R. bed, Tel'p, Tel'g, etc. lines | Value | Gross value of all property | Total value of taxable property | As equalized by the county board | School District No. | Value of property in school district | Road District No. | Value of property in road district | Name of incorporated town or city | Value of all property city |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Portland—O.R.&N.Co.,The | Railr'd materials | Res.Add.Pendl | | | $5000 | $70 | 0000 | 16 | $70 | | | Pendlet'n | $70 |
| " | and supplies | N.Pork | | | 5000 | 70 | 0000 | | | | 520 | | |
| " | One wire system telegraph | Pendleton | 1.95 | 12½ | 12½ | 12½ | 16 | 12½ | 16 | | Pendlet'n | 12½ |
| " | " " | Adams | .50 | 5 | 5 | 5 | 5 | 5 | | | Adams | 5 |
| Cont'd | " " | | | 17½ | | | | 85 | | | | | |
| O.R.&N.Co.,The | Two wire system telegraph | | 4 | 80 | 80 | 80 | 6 | 80 | 17 | 80 | Pendlet'n | |
| | | Echo | 6.10 | 122 | 122 | 122 | 5 | 122 | 18 | 122 | | |
| | | Pendleton | 8.30 | 66 | 66 | 66 | 16 | 66 | 50 | 66 | | 66 |
| | R. of W. | | 3.20 | * | | | 50 | | 5 | | | |
| | & part W² E² | | 4.15 | * | | | 13 | | 85 | | | |
| | & depot grds | Adams | .50 | 6000 | 8 | 8 | 85 | | 85 | | Adams | |
| | outside corporate limits | | 3.90 | * | | | 85 | | | | | |

*$38,500; $40,800; $46,800.  ‡$14,500.  ‖$14,500; $40,560; $40,560; $52,701½; $7,287½; $19,482¼;
†$40,560; $52,701½; $7,287½; $49,482¼;  ¶$40,560; $52,701½; $7,287½; $48,482¼.
2 $14,500; $40,560; $52,701½; $7,287½; $49,482½.

**NOTE.—This reproduction of the tax roll in question is intended to show the descriptions objected to and the general form of the roll. Many figures not material to the present case have been omitted.

REPORTER.

for example, "1.95 miles of one wire system telegraph in the City of Pendleton and School District Number 16," or, "6 10-100 miles of two wire system telegraph in School District Number 5, Road District 18, and Town of Echo." Immediately following the assessment of the two wire system of telegraph, and entered in the column headed "Description of Land," are the initials "R. of W.," and in the column headed "No. of Miles R. R. Bed, Tel'p, Tel'g, Etc. Lines" are figures evidently intended to indicate the number of miles of "R. R. Bed" or "R. of W." in the various road and school districts and incorporated cities and towns through which the road passes; so that the description would read, for example, "3.20 miles of R. R. Bed or R. of W. in road district number 50, and school district number 17."

After the roll had thus been made up, the assessor gave notice, as required by law, of the time and place of meeting of the board of equalization, and the plaintiff appeared before such board by its tax agent, and, without objecting in any way to the listing of its property or the description thereof on the assessment roll, or claiming that it had been assessed with property it did not own, filed a petition for the correction of its assessment, first by reducing the valuation of "its roadbed and track, consisting of 166.40 miles, from $12,000 to $5,500 per mile, or from a total of $1,996,800 to $915,000"; second, "the depot grounds in the City of Pendleton from the assessment of $21,000 to $6,400"; and, third, "the materials and supplies" for repairs and improvements to the road from "$24,850 to nothing." This petition was not disposed of by the board of equalization, but was continued for the consideration of the county court, and such court denied the reduction in the valuation of the roadbed, but reduced the assessment of the depot grounds in Pendleton to $10,-

000, and eliminated the assessment for materials and supplies.

At the January term, 1904, of the county court, the county judge, two commissioners, the district attorney, county clerk and sheriff all being present, the following order was made and entered of record:

"In the Matter of Tax Levy for 1904.

Now on this day the summary of the assessment roll of Umatilla County, Oregon, showing real and personal property assessed to the amount of $9,214,630.72, and polls assessed to amount of $____, the above being the net assessment of Umatilla County, upon which the county court of said county is authorized by law to make the levy of 1903, it is Ordered by the Court that a tax of twenty (20) mills be levied upon the net assessment of real and personal property as returned by the assessor for the year 1903, to wit, on the sum of $9,214,630.72, to be divided as follows: For state and county, fifteen and eight tenths mills (15 8-10) on each dollar's worth of taxable property, payable in coin; for school purposes, four and one tenth mills (4 1-10) on each dollar's worth of taxable property, payable in coin; and for road purposes one tenth of one mill (1-10) on each dollar's worth of taxable property, payable in coin.

It is Further Ordered, that the clerk of this court make a transcript of said assessment and extend the taxes in accordance with the levy as above made by this court, and that the said clerk shall attach a warrant to said transcript of assessment and deliver the same to the Sheriff of Umatilla County, Oregon, which said warrant shall authorize the collection of said taxes for the year 1903 by said sheriff, and the said sheriff be charged with the amount of said levy on said amount of $9,214,630.72, at the rate of twenty (20) mills on the dollar, and $1,000 polls returned in said assessment for the year 1903, by the said assessor."

The journal containing the order was signed by the county judge, probably at the time it was entered, but not by the commissioners until after this proceeding was

instituted. The tax thus levied, together with the levies in the several road and school districts and incorporated cities and towns of the county, were extended by the county clerk, and on February 15, 1904, the assessment roll, together with a warrant as authorized by law for the collection of the taxes, was delivered by the clerk to the sheriff. In May following, this proceeding was instituted. On the final hearing before the circuit court, the writ was sustained as to certain property, the description of which was so indefinite as to be void on its face, but denied as to the remainder. From this decision plaintiff appeals, claiming that the order of the county court levying the tax is void and of no force or effect, because not in compliance with the statute, and that the roll itself was insufficient to sustain such order, and plaintiff's property was not properly described therein.                              AFFIRMED.

For appellant there was a brief over the names of *W. W. Cotton, Carter & Raley*, and *Arthur Champlin Spencer*, with an oral argument by *Mr. Spencer*.

For respondent there was a brief with oral arguments by *Mr. Gilbert Walter Phelps*, District Attorney, and *Mr. James A. Fee*.

MR. JUSTICE BEAN delivered the opinion of the court.

1. Sections 3084, 3085, B. & C. Comp., read as follows:

Section 3084: "The county court of each county, or the board of commissioners thereof, shall, at its term in January in each year, estimate the amount of money to be raised in its county for county purposes, and apportion such amount, together with the amount of state and school tax required by law to be raised in its county, according to the valuation of the taxable property in its county for the year, and such determination shall be entered at large in its records."

Section 3085: "For the purpose of raising revenues for county purposes the county court or board of county commissioners for each county in the State shall, at its Janu-

ary term in each year, levy a tax upon all taxable property in its county, which tax shall be sufficient in its amount to defray the expenses of the county."

The plaintiff contends that by these sections it is the duty of the county court, before levying a tax, to make up an itemized estimate of the several amounts of money to be raised for county purposes, and to enter such estimate at large on its records, that such entry is jurisdictional, and a failure to make it will avoid the tax. Before levying a tax, the county court must necessarily make an estimate of the amount of money to be raised in order to determine the rate of taxation, and it is proper that such estimate should be entered of record, but we do not understand that a failure in that respect is fatal to the tax. The statute provides that after the estimate is made the county court shall apportion the amount thereof, together with the state and county taxes, according to the value of the taxable property in the county. Such determination shall be entered at large on the record, but this requirement is not jurisdictional, nor the measure of the power of the county to levy the tax. The authority to levy a tax is derived from Section 3085, and not from the one providing for the making of the estimate and apportionment and the entry of such determination in the journal. Section 3085 provides that the county court shall, at its January term in each year, levy a tax upon all the taxable property in the county, sufficient in amount to defray the expenses of the county ; and, while this levy must be based on the estimate required to be made under the previous section, its validity is not, in our opinion, dependent on the entry of the estimate in the journal.

The Louisiana cases ( *Waggoner* v. *Maumus*, 112 La. 229, 36 South. 332, and *Police Jury* v. *Bouanchand*, 51 La. Ann. 860, 25 South. 653,) relied upon by the plaintiff are under a statute essentially different from ours. It requires the

officers authorized to levy the tax to cause to be made out and published, for 30 days before their meeting to fix and determine upon the amount of the tax, an estimate exhibiting the various items of expenditure. The evident object of this requirement is to give the taxpayers information of the amount of the probable tax and the purposes for which it is proposed to be raised, and an opportunity to appear and object to any item in the estimate if they so desired. We have no such provision. The estimate is required to be made at the same term of court the tax is levied, and there is no requirement for its publication or notice to the taxpayers The Illinois cases (*Cleveland, C., C. & St. L. R. Co.* v. *People*, 205 Ill. 582, 69 N. E. 89, and *People* v. *Florville*, 207 Ill. 81, 69 N. E. 623), involved the construction of city charters, and are not applicable here. So that we think the tax levy as made was within the power of the court and valid. It was made at a time when all the members of the court were present and participated.

2. The fact—if it is a fact—that the journal entry of the order was not signed by the county commissioners at the time this proceeding was instituted is no ground for annulling or vacating the order. It was signed before any attempt was made by the county to enforce the tax as against the plaintiff, and that is sufficient.

3. The other objections made by the plaintiff all go to the sufficiency of the tax roll and to the description of plaintiff's property as entered therein. It is doubtful whether any of these questions can properly be raised in this character of a proceeding. The statutory writ of review is substantially the same as the common-law writ of certiorari, and will lie when an inferior court or tribunal has exceeded its jurisdiction or has exercised its judicial functions illegally and contrary to the course of procedure applicable to the matter before it. The object of the writ, says this court in *Garnsey* v. *County Court*, 33 Or. 201, 207

(54 Pac. 539, 1089), "is to keep inferior courts and tribunals within the bounds of their jurisdiction, and compel them to proceed regularly in the disposition of matters brought before them for determination; but it cannot be used as a substitute for an appeal, nor does it lie to correct mere errors in the exercise of rightful jurisdiction, or to inquire whether the rulings of the inferior tribunal upon the law and the evidence, and in the application of the law to the facts, are correct."

4. Now, the county court did not exceed its jurisdiction in making the order levying the tax, nor did it proceed illegally in so doing. It is invested with power to levy the tax by statute. It had before it, at the time the order was made, what purported to be, and what was in fact, an assessment roll, regularly made up by the county assessor. It is true the roll was not certified to by the assessor or any other officer, but there is no law of which we are advised, requiring an assessment roll to be so certified. The statute provides that the assessor shall procure from the clerk a blank assessment roll, and forthwith proceed to assess all the taxable property within his county, and return such roll to the clerk on or before a certain time, with a full and complete assessment of such taxable property entered therein: B. & C. Comp. § 3057. When the roll is so made up and returned, it becomes a public document, and no formal certification or identification is required by the law. The county court necessarily determined, in levying the tax, that the roll before it was sufficient in law to authorize it to do so. It was in the exercise of a rightful jurisdiction, and it is doubtful whether mere errors of judgment or of law in holding the assessment roll sufficient can be corrected on a writ of review.

5. But, however this may be, we are of the opinion that the objections made to the assessment of plaintiff's property are not sufficient to invalidate the entire assessment.

The initials and word "O. R. & N. Co., The," as used in the assessment roll, are a sufficient entry of the name of the taxpayer. The plaintiff is commonly known by such initials, and, indeed, it appeared in the tax proceedings and so signed petitions for a reduction in the valuation of its property.

6. It is not necessary that the name of a taxpayer should be entered in the roll opposite the assessment of each separate piece of property. It is enough that it is entered at the top of the page, or the commencement of the assessment, and there is a list of property under appropriate heads, following such name, no other name intervening.

7. Nor does the fact that the assessor divided up the plaintiff's property and assessed it with reference to the several road and school districts and incorporated cities and towns invalidate the assessment. It was the only way the property could be assessed so that the levies for the several road and school districts could be extended on the roll.

8. The description of some of the property is not as definite and certain as it should be, and it may not be sufficient to support a title acquired at a tax sale, but this is no reason why the entire tax should be set aside in a a proceeding of this kind. If some of the means of collecting the tax cannot be made effective because of an imperfect description, it does not follow that the entire assessment will be declared void in a proceeding by certiorari or writ of review: *State* v. *Haight*, 35 N. J. Law, 178; *State* v. *Collector of Jersey City*, 24 N. J. Law, 108. The writ of review under our statute is practically the common-law writ of certiorari, and is a matter not of absolute right, but rests in the sound discretion of the court. When it appears in a proceeding instituted by an individual taxpayer to annul the tax assessed against his property, on account of some insufficiency or irregularity

in the. manner of the assessment or the description of the property, that no equitable grounds exist for the allowance of the writ, it should ordinarily be denied, leaving the tax-payer to such remedies as the law otherwise affords him: *Burnett* v. *Douglas County*, 4 Or. 388; *Woodworth* v. *Gibbs*, 61 Iowa, 398 (16 N. W. 287); *Knapp* v. *Heller*, 32 Wis. 467.

9. There are many decisions to be found in the books in reference to the sufficiency of the description of property on tax rolls, but they are of little value in determining a particular case. Any description is good which would be sufficient in a deed of conveyance or in a contract to convey, and which affords a means of identification, and does not mislead, or is not calculated to mislead, the owner: B. & C. Comp. § 3057; Cooley, Taxation (2 ed.), 404); 1 Desty, Taxation, 567; 1 Blackwell, Tax Titles (5 ed.), § 223.

10. Extrinsic evidence, moreover, is admissible to iden-tify the property, explain ambiguities, and aid in the inter-pretation of the description: *Smith* v. *Shattuck*, 12 Or. 362 (7 Pac. 335); *Minter* v. *Durham*, 13 Or. 470 (11 Pac. 231); *Kelly* v. *Herrall* (C. C.), 20 Fed. 364. If the property as-sessed is not described at all, or if the description used is so uncertain and indefinite as to be void on its face, there is, of course, no assessment, and any attempt by the county court to levy a tax would be void; but where there is an attempt to describe the property, and such description is not void on its face, or might, in the light of extrinsic tes-timony, be sufficient, the levy cannot be declared void on a writ of review.

11. Now, in this case, the description of certain lots in certain blocks in "Res. Add. Pend., City of Pendleton," may or may not be a good description, according to the surrounding circumstances, and the same, we think, may be said of a certain number of miles of "R. R. Bed," or

"R. of W.," or a one or two wire system of telegraph. The assessment to a railroad company of a certain number of miles of "roadbed", is not void because of an insufficient description. The roadbed has a definite location, and there can be no uncertainty as to what property is meant, nor can there be any doubt that it can be found and definitely located from the description: *Oregon & Cal. R. Co.* v. *Jackson County*, 38 Or. 589, 604 (64 Pac. 307, 65 Pac. 369). To determine the sufficiency of the descriptions of property in the assessment roll before us, extrinsic proof is admissible and such proof cannot be had in a proceeding of this kind. The court cannot declare the descriptions void on their face.

12. Again, the statute makes a tax deed conclusive evidence of certain facts and presumptive evidence of others (B. & C. Comp. § 3127), and the county will be deprived of the benefit of these presumptions if the validity of the assessment can be attacked for a mere apparent defect in the description, by writ of review, before any attempt has been made to enforce the tax. The descriptions in this case were sufficient to apprise the plaintiff of the property intended to be assessed to it. It appeared before the board of equalization, and, without making any objection to the assessment on the ground of an imperfect description, or because property had been assessed to it which it did not own, applied for a reduction in the valuation of its property. Indeed, in such application it expressly recognizes that its depot grounds in Pendleton and 166.40 miles of roadbed and track had been properly assessed to it. It obtained a reduction in the valuation of the former, and an adjudication by the county court as to the proper valuation of the latter, and it is therefore not entitled to have the tax levies on such property vacated and declared void in this proceeding because of a defect in the description. It is the duty of a taxpayer to furnish the assessor a list

of his real and personal property liable to taxation, and to make oath to such list: B. & C. Comp. § 3070. If the plaintiff furnished the list as required, it certainly cannot complain at this time of the insufficiency of the description. If it neglected or refused to do so, it ought not to be permitted to challenge by writ of review the sufficiency of the description as made up by the assessor, after treating such description as sufficient in the proceedings before the board of equalization.

It is often said that proceedings for the assessment and levy of a tax are hostile to the taxpayer, and void unless in strict compliance with the statute. In a measure, and under some circumstances, this is true, but the doctrine ought not to prevail in a proceeding such as this, because, as said by Mr. Justice COOLEY: "The proceedings in the assessment of a tax are not, in any proper sense, hostile to the citizen. They are, on the other hand, proceedings necessary and indispensable to the determination of the exact share which each resident or property owner ought to take, and may and ought to be supposed desirous of taking, in meeting the public necessity for a revenue — proceedings which the willingness of the taxpayer cannot dispense with, and which only become hostile when the duty to pay, once fixed, fails to be performed by payment. Then, and then only, do the steps taken by the government assume a compulsory form. Until then the reasonable presumption is that government and taxpayer will act together in harmony, and that the latter will meet his obligation to pay as soon as the former has performed its duty in determining the share to be paid": Cooley, Taxation, 283, note.

From these views, it follows that the decision of the court below should be affirmed, and it is so ordered.

AFFIRMED.